1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

J.J.,

        Plaintiff,

  v.

Oak Grove School District, et al.,

        Defendants.

_____/

NO. C 08-05376 JW

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS WITH LEAVE
TO AMEND**

## I.  INTRODUCTION

J.J., a minor, by and through his Guardian *Ad Litem* Robert M. Vantress, brings this action against Defendants[1] alleging, *inter alia*, violations of 42 U.S.C. § 1983 and the California Unruh Civil Rights Act.  Plaintiff alleges that Defendants deprived him of his civil rights under the Due Process and Equal Protection Clauses of the United States Constitution by failing to provide proper notice and a hearing before his administrative transfer to a different school and by unlawfully targeting him based on his race and gender.

---

[1]  Defendants are Oak Grove School District ("Oak Grove"), Manny Barbara, Katherine Baker, Richard Holterman, Tamra Unck, Risa Quon, Nancy Lettenberger, Jacqueline Adams, Jeremy Nishihara, Dianne Lemke, Dennis Hawkins (collectively, "Oak Grove Defendants"), as well as Deanna Mouser ("Mouser") and the law firm Atkinson, Andelson, Loya, Ruud & Romo ("AALRR") (collectively, "Mouser Defendants").

1    Presently before the Court are: (1) Mouser's Motion to Dismiss and Motion to Strike;[2] and

2    (2) Oak Grove Defendants' Motion to Dismiss.[3]  The Court finds that it can take the Motions under

3    submission without oral argument.  See Civ. L.R. 7-1(b).  Based on the papers submitted to date, the

4    Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss.

5    **II.  BACKGROUND**

6    **A.    Factual Allegations**

7    In a First Amended Complaint[4] filed on July 30, 2010, Plaintiff alleges as follows:

8    On or around November 30, 2007, Plaintiff was referred to the Principal of Bernal

9    Middle School, a school in Defendant Oak Grove School District, for an incident involving a

10    female student that occurred on November 29, 2007.  (FAC ¶¶ 2, 38.)  On November 30,

11    2007, Defendant Unck interviewed the female student and two witnesses regarding the

12    incident.  (Id. ¶¶ 40-41.)  At or about this time, Defendants Unck, Holterman, Mouser and

13    Baker formed the conclusion that Plaintiff had done something wrong, including engaging in

14    criminal sexual assault or battery.  (Id. ¶ 42.)  However, Defendants Mouser and Oak Grove

15    were in possession of significant evidence that would lead to the reasonable conclusion that

16    Plaintiff did not engage in the act of which he was accused.  (Id. ¶ 44.)  Based on the

17    evidence known during the afternoon of November 30, 2007, Defendants could not rationally

18    have concluded that Plaintiff had engaged in the alleged act.  (Id. ¶ 48.)  The conclusions

19    Defendants reached at that time were arbitrary, capricious and based in whole or in part on

20    bias and racial stereotypes concerning African Americans.  (Id.)  On November 30, 2007,

21    Defendant Unck called the police.  (Id. ¶ 46.)  After the police were notified, Plaintiff was

22

23    [2]  (Defendants Mouser's and AALRR's Notice of Motion and Memorandum of Points and Authorities in Support of Motion to Strike and Motion to Dismiss Plaintiff's First Amended Complaint, hereafter, "Mouser Motion," Docket Item No. 152.)

24

25    [3]  (Oak Grove Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, hereafter, "Oak Grove Motion," Docket Item No. 159; Defendants Mouser, Atkinson, Andelson, Loya, Ruud and Romo join in this Motion, Docket Item No. 160.)

26

27    [4]  (First Amended Complaint for Declaratory and Other Relief for Civil Rights Violations, hereafter, "FAC," Docket Item No. 151.)

28

2

United States District Court

For the Northern District of California

1  interviewed and denied the conduct alleged by Defendants.  (Id. ¶ 47.)  The police did not

2  bring any charges against Plaintiff.  (Id.)

3        From November 30, 2007 until December 3, 2007, Defendants removed Plaintiff

4  from his classes and kept him in the Principal's office.  (FAC ¶ 49.)  On December 4, 2007,

5  Plaintiff was formally suspended and Defendant Baker recommended Plaintiff for expulsion.

6  (Id. ¶¶ 49, 51.)  On December 7, 2007, Defendants held a meeting with Plaintiff, his parents

7  and others.  (Id. ¶ 51.)  On December 14, 2007, Defendants notified Plaintiff and his parents

8  that his suspension would be extended until his expulsion hearing.  (Id. ¶¶ 49, 51.)  On

9  January 29, 2008, Oak Grove withdrew the sexual battery charge and decided not to seek the

10  expulsion of Plaintiff.  (Id. ¶ 55.)  On February 7, 2008, Plaintiff and his parents demanded

11  that Plaintiff be returned to school and that his file be expunged of all charges.  (Id. ¶ 57.)

12  Defendants did not respond.  (Id.)  On February 14, 2008, Oak Grove administratively

13  transferred Plaintiff to a different school.  (Id. ¶ 60.)

14  On the basis of the allegations outlined above, Plaintiff alleges seven causes of action:

15  (1) Declaratory Relief; (2) Injunctive Relief; (3) Violations of 42 U.S.C. § 1981; (4) Violations of

16  42 U.S.C. § 1983; (5) Conspiracy to Violate Plaintiff's Civil Rights; (6) Violations of California

17  Unruh Civil Rights Act; and (7) Failure to Supervise.

18  **B.**   **Procedural History**

19        On November 26, 2008, Plaintiff filed his initial Complaint with his parents acting as both

20  his guardian *ad litem* and his representative.  (See Docket Item No. 1.)  After finding that the

21  parents could not be the minor's guardian *ad litem* while representing the case in *pro per*, the Court

22  stayed the case to give the parents sufficient time to find pro bono representation through the Federal

23  Pro Bono Project.  (See Docket Item Nos. 42, 50, 97, 103.)  The Court eventually dismissed the

24  parents' case against Defendants but continued to stay the case to support the parties in their

25  settlement efforts as to the remaining claims of the *minor*.  (See Docket Item No. 138.)

26        On January 28, 2010, the Court issued an Order lifting the stay on the proceedings so that the

27  case could advance beyond the filing of the initial Complaint.  (See Docket Item No. 107.)  On April

28

United States District Court

For the Northern District of California

12, 2010, the Court issued an Order granting in part and denying in part Motions to Dismiss filed by Defendants.  (See Docket Item No. 138.)  The Court also appointed Robert M. Vantress as Temporary Guardian *Ad Litem* and *pro bono* counsel for Plaintiff.  (Id.)  On July 30, 2010, Plaintiff filed a First Amended Complaint.  (Docket Item No. 151.)  The Court has delayed consideration of these Motions for the parties to devote to further settlement efforts.  However, those efforts have not been fruitful.

Presently before the Court are Defendants' Motions to Dismiss.

### III.  STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted.  Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).  For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of the pleading.  Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).  However, mere conclusions couched in factual allegations are not sufficient to state a cause of action.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  Courts may

4

1   dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment.

2   Lopez v. Smith, 203 F.3d 1122, 1129-30 (9th Cir. 2000).

3                                    **IV.  DISCUSSION**

4           Defendants move to dismiss all causes of action on the following grounds: (1) the Oak Grove

5   Defendants are immune from suit under the Eleventh Amendment; (2) Defendants are immune under

6   California Government Code § 821.6; (3) collateral estoppel bars Plaintiff's claims; (4) Defendants

7   are immune under the California litigation privilege; (5) the Oak Grove Defendants are entitled to

8   qualified immunity; (6) Plaintiff lacks standing; (7) the claims against the Mouser Defendants are

9   barred by the California "Anti-SLAPP" statute; (8) the claims against all Defendants are barred by

10  the Noerr-Pennington doctrine; and (9) each of Plaintiff's causes of action fail to state a claim upon

11  which relief can be granted.  (Oak Grove Motion at 11-21; Mouser Motion at 5-24.)  The Court

12  addresses each ground in turn.

13  **A.      Eleventh Amendment Immunity**

14          The Oak Grove Defendants move to dismiss Plaintiff's Section 1983 claim on the ground

15  that school districts are immune from suit under the Eleventh Amendment.  (Oak Grove Motion at

16  17.)  Plaintiff responds that school districts and their officials may be liable under Section 1983 for

17  deprivations of civil rights taken in furtherance of district policy and that suits against officers in

18  their individual capacity do not implicate sovereign immunity.[5]

19           The Eleventh Amendment bars private citizens from suing a state in federal court under

20  either federal- or state-law claims seeking retrospective damages or equitable relief.  Pennhurst State

21  Sch. & Hosp. v. Halderman, 465 U.S. 89, 105-6 (1984).  However, "a federal court, consistent with

22  the Eleventh Amendment, may enjoin state officials to conform their future conduct to the

23  requirements of federal law."  Quern v. Jordan, 440 U.S. 332, 337 (1979).  The immunity of the

24  Eleventh Amendment covers states as well as their "instrumentalities."  Regents of the University of

25  _____

26          [5]  (Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss First Amended
    Complaint (Rule 12(b)(6)) and Defendant Mouser's Anti-SLAPP Motion to Strike at 17-19,
27  hereafter, "Opp'n," Docket Item No. 151.)

28                                           5

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

California v. Doe, 519 U.S. 425, 429 (1997).  Thus, Eleventh Amendment immunity extends to actions against state officials sued in their official capacities because such actions are, in essence, actions against the governmental entity of which the officer is an agent.  Jackson v. Hayakawa, 682 F.2d 1344, 1350 (9th Cir. 1982).  "Although the exact limits of the Eleventh Amendment are difficult to determine, it is clear that the Eleventh Amendment prohibits actions for damages against state agencies when Congress has failed to express a contrary intent."  Belanger v. Madera Unified School Dist., 963 F.2d 248, 250 (9th Cir. 1992).  The Ninth Circuit has held that, ". . . the state is so entangled with the operation of California's local school districts that individual districts are treated as 'state agencies' for purposes of the Eleventh Amendment."  Ass'n of Mexican-American Educators v. State of California, 231 F.3d 572, 582 (9th Cir. 2000) (citation omitted); see also Doe ex rel. Kristen D. v. Willits Unified Sch. Dist., No. C 09-03655 JSW, 2010 WL 890158, *3 (N.D. Cal. Mar. 8, 2010).

Here, Plaintiff sues Oak Grove, a California school district, and the Oak Grove Defendants in their official capacities.  The Court finds that these Defendants are entitled to immunity under the Eleventh Amendment against claims for retrospective monetary and injunctive relief.  Although Plaintiff contends that Oak Grove is a "local agency" and cites numerous cases regarding the liability of municipal agencies and corporations,[6] the Ninth Circuit has determined that California school districts like Oak Grove constitute state agencies for purposes of the Eleventh Amendment.  See Ass'n of Mexican-American Educators, 231 F.3d at 582.  This immunity also extends to the individual Oak Grove Defendants to the extent that they are sued in their official capacities as school and district officials.

However, Plaintiff also sues: (1) the Oak Grove Defendants in their "personal capacities"; and (2) the Mouser Defendants, who Plaintiff alleges were not "acting in any official capacity for The School District."[7]  Because Plaintiff brings suit against these Defendants in their individual

---

[6] (Opp'n at 17-18.)

[7] (FAC ¶¶ 17-19.)

6

capacities, they are not entitled to immunity from suit under the Eleventh Amendment.  See Hafer v. Melo, 502 U.S. 21, 30-31 (1991).

Accordingly, the Court GRANTS the Oak Grove Defendants' Motion to Dismiss each claim in the First Amended Complaint to the extent such claims seek retrospective monetary or injunctive relief against Oak Grove and the Oak Grove Defendants sued in their official capacities.  The Court DENIES Defendants' Motions to Dismiss under the Eleventh Amendment: (1) as to the Mouser Defendants and Oak Grove Defendants sued in their individual capacities; and (2) as to all Defendants with regard to any prospective relief.[8]

**B.    California Government Code § 821.6**

The Oak Grove Defendants move to dismiss on the ground that they are immune from suit for instituting proceedings against Plaintiff under California Government Code § 821.6.  (Oak Grove Motion at 16-17.)  Plaintiff responds that any prosecutorial immunity afforded by Section 821.6 does not extend to Defendants because the basis for the claims against them are not in connection with a judicial proceeding.  (Opp'n at 19-20.)

Cal. Gov't Code § 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  "California courts construe [S]ection 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits."  Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1048 (Cal. Ct. App. 2007).  "Investigations are considered to be part of judicial and administrative proceedings for purposes of [S]ection 821.6 immunity."  Richardson-Tunnell v. School Ins. Program for Employees, 157 Cal. App. 4th 1056, 1062 (Cal. Ct. App. 2008).  Immunity under Section 821.6 "is not limited to claims for malicious prosecution, but

---

[8]  Defendant Oak Grove's Motion to Dismiss requests that the Court dismiss only the Section 1983 cause of action under the Eleventh Amendment.  (Oak Grove Motion at 17.)  However, the Eleventh Amendment immunity described above applies equally to each of Plaintiff's causes of action to the extent they seek retrospective relief. See Pennhurst, 465 U.S. at 106, 120.

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1   also extends to other causes of action arising from conduct protected under the statute, including

2   defamation and intentional infliction of emotional distress." <u>Gillan</u>, 147 Cal. App. 4th at 1048.

3       Further, "[t]he immunity conferred by [S]ection 821.6 is not limited to peace officers and

4   prosecutors but has been extended to public school officials . . ." <u>Tur v. City of Los Angeles</u>, 51

5   Cal. App. 4th 897, 901 (Cal. Ct. App. 1996) (citations omitted).  Moreover, although Section 821.6

6   expressly immunizes only the employee, "if the employee is immune, so too is the [employer]."

7   <u>Kemmerer v. County of Fresno</u>, 200 Cal. App. 3d 1426, 1435 (Cal. Ct. App. 1988) (citing Cal. Gov't

8   Code § 815.2).  The definition of a "public employee" does not include "an independent contractor."

9   Cal. Gov't Code § 810.2.

10      Here, Plaintiff alleges state and federal tort causes of action on the ground that Defendants

11   denied him various civil rights during their investigation of his conduct and subsequent expulsion

12   proceedings.  With regard to the Oak Grove Defendants, each of their alleged actions were within

13   the scope of their employment by the school district.  Based on Plaintiff's own allegations, therefore,

14   the Court finds that the actions of the Oak Grove Defendants in instituting and prosecuting

15   Plaintiff's administrative disciplinary proceedings are immunized by Section 821.6 against any state

16   law tort claims.[9]  However, Plaintiff alleges that the Mouser Defendants were retained by the School

17   District "as independent contractors," and did not act in an official capacity.  (<u>See</u> FAC ¶¶ 12, 19.)

18   Thus, Mouser Defendants are not entitled to immunity under Section 821.6.

19      Accordingly, the Court GRANTS Oak Grove and Oak Grove Defendants' Motion to Dismiss

20   pursuant to Section 821.6 as to Plaintiff's Sixth and Seventh Causes of Action only.[10]  The Court

21   DENIES the Mouser Defendants' Motion to Dismiss pursuant to Section 821.6.

22   **C.**     **<u>Collateral Estoppel</u>**

23   _____

24      [9]  Section 821.6 does not apply to Plaintiff's federal claims. "It is a long standing principle
     that a state may not immunize its officials from the requirements of federal law." <u>LSO, Ltd. v.</u>

25   <u>Stroh</u>, 205 F.3d 1146, 1160 (9th Cir. 2000).

26      [10]  Because the Court finds that Plaintiff's Seventh Cause of Action for Negligent
     Supervision is barred by Section 821.6, the Court does not reach the Oak Grove Defendants'

27   alternative argument that the Seventh Cause of Action is barred by the California Tort Claims Act.
     (Oak Grove Motion at 19.)

28

United States District Court

For the Northern District of California

1    Defendants move to dismiss each cause of action on the ground that Plaintiff failed to

2  exhaust his judicial remedies and is now collaterally estopped from disputing the findings of the

3  Governing Board of the Oak Grove School District (the "Board").  (Oak Grove Motion at 12-13;

4  Mouser Motion at 9-11.)  Specifically, Defendants contend that Plaintiff was required but failed to

5  file a mandamus action in California state court challenging the findings of the District Governing

6  Board that, among other things, no discrimination occurred, Plaintiff's school records were accurate

7  and Plaintiff's administrative transfer was proper.  (Id.)  Plaintiff responds that the mere fact that

8  there are state procedures available does not preclude Plaintiff from pursuing remedies in federal

9  court.  (Opp'n at 25.)

10    "Collateral estoppel, or 'issue preclusion,' requires that '[w]hen an issue of fact or law is

11  actually litigated and determined by a valid and final judgment, and the determination is essential to

12  the judgment, the determination is conclusive in a subsequent action between the parties, whether on

13  the same or a different claim.'"  Eilrich v. Remas, 839 F.2d 630, 632 (9th Cir. 1988).  A court may

14  give preclusive effect to administrative findings "[w]hen an administrative agency is acting in a

15  judicial capacity and resolved disputed issues of fact properly before it which the parties have had an

16  adequate opportunity to litigate."  United States v. Utah Constr. & Min. Co., 384 U.S. 394, 422

17  (1966).  When a state agency determination meets the requirements of Utah Construction, "federal

18  courts must give the agency's factfinding the same preclusive effect to which it would be entitled in

19  the State's courts."  Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986).

20    In California, "unless a party to a quasi-judicial proceeding challenges the agency's adverse

21  findings made in that proceeding, by means of a mandate action in superior court, those findings are

22  binding in later civil actions."  Johnson v. City of Loma Linda, 24 Cal. 4th 61, 69-70 (2000).  In

23  People v. Sims,[11] the California Supreme Court established a two-part test to evaluate the preclusive

24  effect of final administrative determinations.  First, the prior decision must be made by an

25  administrative agency acting in a judicial capacity that resolved disputed issues of fact properly

26  _____

27    [11]  32 Cal. 3d 468 (1982), superseded on other grounds as stated in Gikas v. Zolin, 6 Cal. 4th
     841, 851 (1993).

28                                                      9

United States District Court

For the Northern District of California

before it which the parties had an adequate opportunity to litigate.  <u>Sims</u>, 32 Cal. 3d at 479.  Second, as with traditional collateral estoppel criteria, an issue may not be relitigated if "(1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]."  <u>Eilrich</u>, 839 F.2d at 633 (quoting <u>Sims</u>, 32 Cal. 3d at 484).  Applying similar standards, federal courts have held that findings by a school district or State Board of Education, when left unchallenged, may preclude federal civil actions under Section 1983.  <u>See, e.g.</u>, <u>Plough By and Through Plough v. West Des Moines Comm. Sch. Dist.</u>, 70 F.3d 512, 515-17 (8th Cir. 1995).

Here, the Court finds that the record before it is not adequate to determine whether the factual determinations made by the Governing Board of the school district should be given preclusive effect.  In particular, the record does not establish that the Board was acting in a judicial or quasi-judicial capacity authorized under California law.  Furthermore, the record does not establish that Plaintiff was provided an adequate opportunity to litigate each of the issues raised in this case that Defendants contend were determined by the Board.

Accordingly, the Court DENIES Defendants' Motion to Dismiss on collateral estoppel grounds without prejudice to Defendants' right to renew at the appropriate time through a motion for summary judgment.

**D.**   **California Civil Code § 47(b)**

Defendants move to dismiss Plaintiff's claims on the ground that they are barred by the "litigation privilege" found in California Civil Code § 47(b) as Defendants are being sued for communications made in an official school proceeding.  (Oak Grove Motion at 16; Mouser Motion at 8.)  Plaintiff responds that his claims against Defendants are not in connection with a judicial proceeding and that the Complaint simply alleges that Defendants "were carrying out a policy in a discriminatory manner and in violation of Due Process."  (Opp'n at 19-20.)

The principal purpose of the Section 47 "litigation privilege" is to afford litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently

10

United States District Court

For the Northern District of California

by derivative tort actions." <u>Silberg v. Anderson</u>, 50 Cal. 3d 205, 213 (1990).  Section 47 "further promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests." <u>Id.</u> at 214.  However, "the privilege protects only against communicative acts and not against noncommunicative acts." <u>Jacob B. v. County of Shasta</u>, 40 Cal. 4th 948, 956 (2007) (emphasis omitted).

Here, Plaintiff alleges that Defendants denied him equal protection and due process by discriminating against him based on his ethnicity and failing to employ the proper procedures and safeguards during his expulsion proceedings.  These are noncommunicative acts, and Plaintiff is not challenging any statement by Defendants in a judicial or quasi-judicial proceeding.  Thus, the Court finds that Plaintiff's claims arising from these allegations do not fall within the litigation privilege of Section 47.

Accordingly, the Court DENIES Defendants' Motion to Dismiss based on the Section 47 litigation privilege.

**E.      Plaintiff's Standing**

Defendants move to dismiss on the ground that Plaintiff lacks standing to pursue his due process claims, because a transfer to another school does not implicate any due process rights.  (Oak Grove Motion at 11; Mouser Motion at 7.)  Plaintiff responds that he has adequately alleged a denial of his rights under the Due Process and Equal Protection Clauses of the United States Constitution and other federal and state laws.  (Opp'n at 1.)

To establish standing to bring suit pursuant to Article III of the Constitution, a plaintiff must establish three elements: (1) injury in fact; (2) causal connection; and (3) likelihood of redressability by the courts.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).  First, to find an injury in fact there must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" <u>Id.</u> at 560 (citations omitted).  A particularized injury is one that "affects the plaintiff in a personal and individual way." <u>Id.</u> at 560 n.1.  "Second, there must be a causal connection between the injury and the conduct complained of; the injury has to be fairly traceable to the challenged action of the defendant, and not

11

the result of the independent action of some third party not before the court." Id. at 560. "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561.

The Supreme Court has "recognized that maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures." New Jersey v. T.L.O., 469 U.S. 325, 339-40 (1985). However, "students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." Goss v. Lopez, 419 U.S. 565, 579 (1975). "[E]ducation is perhaps the most important function of state and local governments,[] and the total exclusion from the educational process for more than a trivial period . . . is a serious event in the life of the suspended child." Id. at 576 (citation omitted). "Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Id. at 581. "Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." Id. at 584.

The Supreme Court has also recognized that state education codes can impart rights to students such that deprivation of those rights violates due process. Goss, 419 U.S. at 573. California Education Code §§ 48900 and 48900.2 state that a pupil may be suspended or recommended for expulsion if the principal of the school in which the pupil is enrolled determines that the pupil has committed sexual harassment.[12] A principal, the principal's designee or the superintendent of schools may suspend a pupil from the school for no more than five consecutive schooldays. Cal. Ed. Code § 48911(a). The suspension shall be preceded by an informal conference

_____

[12] California Education Code § 212.5 defines sexual harassment as "unwelcome sexual advances, requests for sexual favors, and other verbal, visual, or physical conduct of a sexual nature, made by someone from or in the work or educational setting, under any of the following conditions: . . . (c) The conduct has the purpose or effect of having a negative impact upon the individual's work or academic performance, or of creating an intimidating, hostile, or offensive work or educational environment."

United States District Court
For the Northern District of California

1   conducted by the principal or the principal's designee or the superintendent of schools between the

2   pupil and, whenever practicable, the teacher, supervisor, or school employee who referred the pupil

3   to the principal, though a conference need not be provided if the principal determines that the pupil

4   constitutes "a clear and present danger to the life, safety, or health of pupils or school personnel."

5   Cal. Ed. Code § 48911(b), (c).  Where the school is considering expulsion, the school district

6   superintendent or his or her designee may extend the suspension until the governing board has

7   rendered a decision in the action.  Cal. Ed. Code § 48911(g).  A hearing must be held prior to

8   expulsion.  Cal. Ed. Code § 48918.  "If the hearing officer or administrative panel decides not to

9   recommend expulsion, the expulsion proceedings shall be terminated and the pupil immediately

10  shall be reinstated and permitted to return to a classroom instructional program, any other

11  instructional program, a rehabilitation program, or any combination of these programs."  Cal. Ed.

12  Code § 48918(e).

13          Here, in support of his allegation that he was injured by Defendants, Plaintiff alleges as

14  follows:

15          [F]rom November 30, 2007 through December 3, 2007, Defendants removed JJ from all
        of his classes at Bernal. JJ was kept in Defendant Baker's office from November 30, 2007 until
16      December 3, 2007. (FAC ¶ 49.)  On December 3, 2007, Defendants sent JJ home suspended on
        that day; it formally suspended him on December 4, 2007.  (Id.)  Defendants did not purport to
17      extend the suspension until his expulsion hearing until December 14, 2007, ten days too late.
        (Id.)
18          On February 7, 2008, JJ and his parents demanded that JJ be returned with school and
        that his CUM file be expunged of all charges.  (FAC ¶ 57.)  Defendants did not respond, nor did
19      they provide his parents access to the CUM file within a reasonable time.  (Id.)
            Defendants Holtermann, Unck, Baker, Quon and Mouser opposed the return of JJ to
20      school even as of February 8, 2008.  (FAC ¶ 59.)  At that time, each of those Defendants knew
        that the female student involved in the alleged incident did not oppose JJ's return to school.  (Id.)
21      But they decided to continue to deny JJ the ability to return to school, and caused others to do
        the same.  (Id.)
22          However, despite the absence of actual proof that JJ had perpetrated the acts of which
        he had been unjustly accused, The School District ignored JJ's parents' demand to return JJ to
23      school and expunge his CUM file of the charges of which he had not been found guilty.  (FAC
        ¶ 60.)  Instead, The School District administratively transferred JJ out of the school on February
24      14, 2008, 76 days after he was suspended.  (Id.)

25          Based on the allegations above, the Court finds that Plaintiff adequately alleges an invasion

26  of a legally protected interest.  Among other things, Plaintiff alleges that the time between his initial

27  suspension on November 30, 2007 and Defendants' decision on December 14, 2007 to extend the

28

                                            13

United States District Court
For the Northern District of California

suspension until his expulsion hearing lasted longer than the five school days permitted by

Section 48911(a).  (FAC ¶ 49.)  Plaintiff also alleges that Defendants failed to return him to class

after deciding on February 7, 2008 not to seek his expulsion.  (Id. ¶ 59.)  Finally, Plaintiff alleges

that he did not engage in the underlying conduct charged by Oak Grove and that there was an

insufficient evidentiary basis to support his suspension and transfer.  (Id. ¶¶ 48, 60.)  The Court finds

that these allegations, if true, would establish a failure by Defendants to comply with the

requirements of the Education Code and therefore a violation of a legally protected interest.  Cal. Ed.

Code §§ 48911(a), 48918(e), 49070.  Moreover, because Plaintiff was removed from the educational

environment for such a lengthy period of time, the harm suffered by Plaintiff is both concrete and

particularized.

     Defendants' reliance on Nevares v. San Marcos Consol. Indep. Sch. Dist.[13] for the

proposition that a transfer to another school does not implicate the Due Process Clause is misplaced.

(Oak Grove Motion at 11.)  Plaintiff's allegations are distinguishable from Nevares because he

alleges not simply a transfer from one school to another, but a transfer without any notice or a

hearing following a 76-day suspension that allegedly failed to comply with California law.[14]

     Accordingly, the Court DENIES Defendants' Motions to Dismiss based on lack of standing.

**F.**    **Anti-SLAPP Statute**

     The Mouser Defendants move to dismiss the Complaint on the ground that their alleged

actions undertaken in connection with official proceedings constitute protected activity for purposes

of California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute"), and therefore it is

---

[13]  111 F.3d 25 (5th Cir. 1997).

[14]  To establish standing, Plaintiff must also show causation–i.e., that his injury is "fairly traceable to the challenged action of [Defendant]"–and redressability, or a likelihood that his injury will be "redressed by a favorable decision."  Lujan, 504 U.S. at 560-61.  Based on the allegations discussed above, the Court finds that Plaintiff has shown causation, insofar as he has named as Defendants the school district and each of the administrators who he alleges were responsible for his suspension, the recommendation of expulsion, the decision to cancel the expulsion hearing and his ultimate transfer to a different school.  Further, Plaintiff shows redressability, insofar as he seeks equitable relief in the form of a declaratory judgment and an injunction, the correction of his cumulative student file and monetary compensation for the violation of his rights.  Thus, the other elements of the standing inquiry are satisfied.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Plaintiff's burden to establish a probability of success on the merits before this case may proceed. (Mouser Motion at 6.)  Plaintiff responds that the anti-SLAPP statute does not apply to claims brought under federal law and that, in any event, Defendant's Motion is untimely.  (Opp'n at 10-11.)

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Code Civ. Proc. § 425.16(b)(1).  "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."  Cal. Code Civ. Proc. § 425.16(e).

"Only a cause of action that satisfies both prongs of the anti-SLAPP statute–i.e., that arises from protected speech or petitioning and lacks even minimal merit–is a SLAPP, subject to being stricken under the statute."  Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002) (emphasis omitted). "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech."  City of Cotati v. Cashman, 29 Cal. 4th 69, 78 (2002) (emphasis omitted). "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning."  Navellier, 29 Cal. 4th at 92.  "Thus, the fact that a complaint alleges that a public entity's action was taken as a result of a majority vote of its constituent members does not mean that the litigation challenging that action *arose from* protected activity, where the measure itself is not an exercise of free speech or petition."  San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn., 125 Cal. App. 4th 343,

United States District Court

For the Northern District of California

354 (Cal. Ct. App. 2004) (emphasis in original).  A decision by a government board, as governmental action, does not implicate the exercise of free speech or petition.  See id. at 355; see also USA Waste of Cal., Inc. v. City of Irwindale, 184 Cal. App. 4th 53, 64-65 (Cal. Ct. App. 2010).

In this case, Plaintiff challenges the actions undertaken by the Oak Grove Defendants and the Mouser Defendants with respect to his expulsion.  Plaintiff alleges that Defendants discriminated against him on the basis of race and denied him various due process rights.  Plaintiff does not challenge any act "in furtherance of [Defendants'] right of petition or free speech," but rather challenges the process that he was afforded by Defendants and the ultimate decision by school and district officials to administratively transfer him.  Plaintiff alleges that the Mouser Defendants played an important role in this process.  The Court finds that these allegations do not challenge the Mouser Defendants' right of petition or free speech, or any other activity protected by the anti-SLAPP statute.

Accordingly, the Court DENIES the Mouser Defendants' Motion to Dismiss based on the anti-SLAPP statute.

**G.    Noerr-Pennington Doctrine**

Defendants move to dismiss the Complaint on the ground that they are being sued for their role in the investigation of Plaintiff's misconduct and the proceedings that followed, and that this conduct is protected under the Noerr-Pennington doctrine.  (Oak Grove Motion at 14; Mouser Motion at 20.)

The Noerr-Pennington[15] doctrine exempts from civil liability all those who petition departments of the government for redress on First Amendment grounds.  Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005).  "Lawsuits are protected by the doctrine because they are essentially petitions to the courts for redress of grievances."  Theofel v. Farey-Jones, 359 F.3d 1066, 1078 (9th Cir. 2004).  "The doctrine is typically invoked to immunize the act of petitioning itself–i.e., the filing of the lawsuit.  But it has been extended to certain conduct

---

[15]   See Mine Workers v. Pennington, 381 U.S. 657 (1965); Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961).

16

United States District Court

For the Northern District of California

1  'incidental to the prosecution of the suit,' for example, deciding whether to settle a claim." Id.

2  (citation omitted).

3          Here, as discussed previously, Plaintiff has not brought suit against Defendants based on

4  their instigation of disciplinary procedures against him.  Instead, Plaintiff's allegations challenge the

5  process that he was allegedly denied with respect to his disciplinary proceedings and Defendants'

6  allegedly improper motives in punishing him.  Thus, the Court finds that Plaintiff's lawsuit does not

7  burden any right to petition the government that is protected by the Noerr-Pennington doctrine.

8          Accordingly, the Court DENIES Defendants' Motion to Dismiss based on the Noerr-

9  Pennington doctrine.

10  **H.      Sufficiency of Plaintiff's Allegations**

11          **1.      Claim for Injunctive and Declaratory Relief**

12          Defendants move to dismiss the Complaint on the ground that the "causes of action" for

13  declaratory and injunctive relief are moot because Plaintiff has completed the eighth grade and is no

14  longer a student of Oak Grove School District.  (Oak Grove Motion at 18; Mouser Motion at 21.)

15  Plaintiff responds that these claims are not moot because Plaintiff is seeking a declaration that he is

16  innocent of the charge and to have Defendants correct his student records.  (Opp'n at 19.)

17          "Dismissal of a case 'on grounds of mootness would be justified only if it were absolutely

18  clear that the litigant no longer had any  need of the judicial protection that it sought.'"  Jacobus v.

19  Alaska, 338 F.3d 1095, 1102-03 (9th Cir. 2003) (quoting Adarand Constructors, Inc. v. Slater, 528

20  U.S. 216, 224 (2000)).  "It is well settled that 'a defendant's voluntary cessation of a challenged

21  practice does not deprive a federal court of its power to determine the legality of the practice.'"

22  Friends of the Earth, Inc. v. Laidlaw Environmental Servs., 528 U.S. 167, 189 (2000) (quoting City

23  of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)).  "[I]f it did, the courts would be

24  compelled to leave '[t]he defendant . . . free to return to his old ways.'"  City of Mesquite, 455 U.S.

25  at 289 n.10 (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)).

26          Here, the Court does not find that Plaintiff's claims for declaratory relief and an injunction

27  are moot.  If Plaintiff's allegations are proved, the alleged harm to Plaintiff could be remedied, at

28                                                      17

United States District Court

For the Northern District of California

1    least in part, by a declaration regarding the underlying conduct and injunctive relief requiring the

2    correction of his official school records.

3        Accordingly, the Court DENIES Defendants' Motion to Dismiss the First Cause of Action

4    for Declaratory Relief and Second Cause of Action for Injunctive relief.[16]

5        **2.    Claim for Violations of § 1981**

6        Defendants move to dismiss Plaintiff's claim for violation 42 U.S.C. § 1981 on the ground

7    that it is premised entirely on the legally unsupportable allegation that the Student Behavior and

8    Parent Information Handbook constituted a contract between Plaintiff and Defendants.  (Oak Grove

9    Motion at 20.)  Plaintiff responds that the Complaint alleges sufficient facts to establish the elements

10   of a valid contract between Oak Grove and Plaintiff.  (Opp'n at 16-17.)

11       Section 1981(a) provides: "All persons within the jurisdiction of the United States shall have

12   the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

13   evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and

14   property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties,

15   taxes, licenses, and exactions of every kind, and to no other."  42 U.S.C. § 1981(a).  In enacting

16   Section 1981, "Congress intended to protect from discrimination identifiable classes of persons who

17   are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."

18   Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987).  Section 1981 can be violated only

19   by intentional discrimination on the basis of race or ethnicity.  General Bldg. Contractors Ass'n, Inc.

20   v. Pennsylvania, 458 U.S. 375, 390-91 (1982).  Absent a discriminatory purpose, a facially neutral

21   law that results in a racially disproportionate impact does not violate Section 1981.  Id.  Proof of

22

23   ───────────────

       [16]  Though not raised by Defendants, the Court notes that Plaintiff's claims for declaratory
     and injunctive relief are more properly pleaded as remedies, rather than as independent causes of
24   action.  The Declaratory Judgment Act ("DJA") authorizes a court to declare the rights and other
     legal relations of interested parties.  28 U.S.C. § 2201(a).  The DJA's operation "is procedural only."
25   Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937).  The DJA "merely
     offers an additional remedy to litigants."  Nat'l Union Fire Ins. Co. v. Karp, 108 F.3d 17, 21 (2d Cir.
26   1997) (emphasis omitted).  Similarly, "an injunction is a remedy to another claim or cause of action
     and not a claim or cause of action in and of itself."  Curtis v. Option One Mortg. Corp., No. 109-cv-
27   1608 AWI SMS, 2010 WL 599816, at *13 (E.D. Cal. Feb. 18, 2010).

28                                              18

intent to discriminate is necessary to establish a violation of Section 1981, which means that, "while the federal rules require only that plaintiffs aver intent generally . . . under [Section 1981] they must at least allege facts that would support an inference that defendants intentionally and purposefully discriminated against them." Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1313 (9th Cir. 1992).

Here, Plaintiff alleges in pertinent part:

> In engaging in and performing the acts, omissions and conduct alleged above, Defendants' [sic] had an improper motive to enforce Defendants' Zero Tolerance Policy strictly, without regard to JJ's actual guilt or innocence, and to support the biased and discriminatory views of Defendants Holtermann, Unck, Baker and other unknown defendants who prejudged JJ as a person of bad character who needed to be expelled from Bernal School and to make an example of him. (FAC ¶ 66.) Said motives were influenced by said Defendants Holtermann, Unck, Baker's views about African Americans and/or males in their behavior towards females. (Id.) Their conduct discriminated against JJ on the basis of his race. (Id.)

Based on the allegations above, the Court finds that Plaintiff has not pleaded facts sufficient to sustain a cause of action under Section 1981. In particular, Plaintiff has not alleged facts sufficient to support an inference that Defendants intentionally and purposefully discriminated against him. Plaintiff's allegation that the zero tolerance policy had a racially disproportionate impact is insufficient given Plaintiff's concession that the policy was facially neutral. (Opp'n at 8.) Moreover, Plaintiffs' allegation that Defendants were "influenced by said Defendants Holtermann, Unck, Baker's views about African Americans and/or males in their behavior toward females" is insufficient to establish intentional and purposeful discrimination on the basis of Plaintiff's ethnicity. In particular, Plaintiff fails to allege what these "views" were and how they influenced Defendants' intentions with respect to Plaintiff. Thus, Plaintiff fails to state a claim for violation of Section 1981.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss the Third Cause of Action for violations of Section 1981 as to all Defendants without prejudice to Plaintiff to amend his pleadings, if so desired.

19

United States District Court

For the Northern District of California

**3.     Claim for Violations of § 1983**

At issue is whether Plaintiff has pleaded sufficient facts to establish a right to relief pursuant to 42 U.S.C. § 1983.

"In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendants were acting under color of state law and (2) that their conduct subjected him or caused him to be subjected to a deprivation of some right, privilege or immunity secured by the Constitution of the United States." Ouzts v. Maryland Nat. Ins. Co., 505 F.2d 547, 550 (9th Cir. 1974).

**a.     Oak Grove Defendants**

The Oak Grove Defendants contend that Plaintiff cannot establish any deprivation of a right, privilege or immunity secured by the Constitution of the United States because Plaintiff was provided due process and his transfer alone did not violate any right.  (Oak Grove Motion at 17.) Plaintiff responds that Defendants violated the California Education Code, that they denied him due process, and that Oak Grove's decision to transfer him was not supported by sufficient evidence. (Opp'n at 14-15.)

As discussed above, the Court finds that Plaintiff has alleged sufficient facts to establish a triable issue whether more formal procedures were required to protect his Due Process rights prior to his suspension and whether Defendants violated Plaintiff's right to due process by not returning him to school once they determined that expulsion was not appropriate.

Accordingly, the Court DENIES the Oak Grove Defendants' Motion to Dismiss the claim under Section 1983.

**b.     Qualified Immunity**

Alternatively, the Oak Grove Defendants contend that, even if Plaintiff has alleged sufficient facts to state a claim for violation of Section 1983, they are entitled to qualified immunity.  (Oak Grove Motion at 21-22.)  Plaintiff responds that the Oak Grove Defendants are not entitled to qualified immunity because the Complaint alleges conduct that violated clearly established law that no reasonable official would have believed was lawful.  (Opp'n at 21.)

United States District Court

For the Northern District of California

Qualified immunity is a defense against liability available to government officials who perform executive and administrative functions and who are sued for monetary relief in their personal capacities.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The doctrine shields public officers from "undue interference with their duties and potentially disabling threats of liability."  Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982); see also Brosseau v. Haugen, 543 U.S. 194 (2004).  To determine whether a public official is entitled to qualified immunity from § 1983 liability, a court must consider: (1) whether the plaintiff has identified a specific federal law or constitutional right that allegedly has been violated; (2) whether that right was so clearly established as to alert a reasonable official to its parameters; and (3) whether a reasonable officer could have believed his or her conduct was lawful.  See Sweaney v. Ada County, 119 F.3d 1385, 1388 (9th Cir. 1997) (citing Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996)).  Where a plaintiff has established the existence of a "clearly established" right, the defendant has the burden of proving that, even if he violated the plaintiff's constitutional rights, his actions were reasonable.  Doe v. Petaluma City Sch. Dist., 54 F.3d 1447, 1450 (9th Cir. 1995).  "[I]n the specific context of school discipline, . . . a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student."  Wood v. Strickland, 420 U.S. 308, 322 (1975).

Here, Plaintiff alleges in pertinent part:

> JJ vigorously denied that he committed this act.  (FAC ¶ 3.)  JJ was ultimately expelled. (Id.)  He had no prior similar incidents of alleged misconduct, and there was no warning of any kind, nor any attempt whatsoever by Defendants to impose any lesser penalties or to receive counseling.  (Id.)  JJ was not even given his rights granted by the U.S. Constitution and the California Education Code to challenge the allegations before any impartial adjudicatory body. (Id.)  The School District purported to act as both Judge and Prosecutor, and from the very beginning, believed JJ was guilty of the allegation.  (Id.)  These wrongful acts were motived [sic] in whole or in part by racial discrimination by one or more of Defendants.  (Id.)

Based on the allegations above, the Court finds that the Oak Grove Defendants are not entitled to qualified immunity.  In particular, Plaintiff has alleged that Defendants were motivated at

United States District Court

For the Northern District of California

1    least in part by impermissible discriminatory motives.  The Court finds that these facts, if proven,

2    would be sufficient to establish that Defendants did not act in "subjective good faith."  Thus, as

3    pleaded, the Court finds that Oak Grove Defendants are not entitled to qualified immunity.

4         Accordingly, the Court DENIES the Oak Grove Defendant's Motion to Dismiss based on

5    qualified immunity.

6              **c.      Mouser Defendants**

7         The Mouser Defendants contend that Plaintiff's claim under Section 1983 fails on the ground

8    that Mouser and AALRR are not state employees and were not acting under color of state law.

9    (Mouser Motion at 11-12.)

10        To state a claim under Section 1983, the conduct at issue must have occurred "under color

11   of" state law.  42 U.S.C. § 1983.  "[T]hus, liability attaches only to those wrongdoers 'who carry a

12   badge of authority of a State and represent it in some capacity, whether they act in accordance with

13   their authority or misuse it.'"  National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191

14   (1988).

15        In the typical case raising a state-action issue, a private party has taken the decisive step that
     caused the harm to the plaintiff, and the question is whether the State was sufficiently involved

16        to treat that decisive conduct as state action.  This may occur if the State creates the legal
     framework governing the conduct,[] if it delegates its authority to the private actor,[] or

17        sometimes if it knowingly accepts the benefits derived from unconstitutional behavior.

18   Id. at 192.  "[T]here is no rigid formula for measuring state action for purposes of section 1983

19   liability.  Rather, it is a process of 'sifting facts and weighing circumstances' which must lead us to a

20   correct determination."  Ouzts, 505 F.2d at 550.

21        In this case, Plaintiff alleges:

22             [The School District] retained an outside attorney, Defendant Mouser, who is believed
          to have led the charge and counseled The District to violate Plaintiff's civil rights.  (FAC ¶ 12.)

23        She is believed to have recommended the illegal conduct from the moment she became involved,
          which was very near the incident itself.  (Id.)  She caused or helped The [School] District

24        overzealously pursue expulsion of all students engaging in alleged violations of the Student
          Handbook, even minor violations, and without determination of whether alternative means of

25        discipline or behavior modification would correct the student conduct, and against all alleged
          student offenders, even for minor offenses, to direct the School District's handling of the

26        incident. (Id.)  He[r] participation led to the intentional manufacturing of false evidence and had
          the purpose and effect of discriminating against African Americans generally, and JJ in

27        particular. (Id.)

28                                          22

1
2
Defendant Mouser was, at all times relevant, an individual residing in this District employed by Defendant AALRR, and neither Mouser nor AALRR were acting in any official capacity for The School District, but were retained by The School District as private attorneys, as independent contractors, to provide legal services to The School District.  (FAC ¶ 19.)

3
Based on these allegations, the Court finds that the Mouser Defendants were not acting under

4
color of state law.  The Complaint alleges both that Mouser "led the charge and counseled The

5
District to violate Plaintiff's civil rights" but also that "neither Mouser nor [AALRR] were acting in

6
any official capacity for The School District."  (FAC ¶¶ 12, 19.)  Given these contradictory

7
allegations, the Court does not find that the Mouser Defendants acted under color of state law.

8
Accordingly, the Court GRANTS the Mouser Defendants' Motion to Dismiss the Fourth

9
Cause of Action for Violations of Section 1983 without prejudice to Plaintiff to amend his

10
pleadings, if so desired.

11
### 4.    Claim for Violations of § 1985 and § 1986

12
Defendants contend that the Section 1985 conspiracy cause of action must be dismissed on

13
the following grounds: (1) Plaintiff's allegation that Defendants zealously prosecuted "all" students

14
for violations of the Student Handbook establishes that there was no racial animus; (2) Plaintiff's

15
allegations of a conspiracy to discriminate on the basis of race are conclusory; (3) a conspiracy

16
claim cannot be stated between a school board, its employees and its legal counsel because all are

17
treated as one entity under the intracorporate conspiracy doctrine; and (4) no claim can be stated

18
against Defendant Mouser because an attorney and a client are not liable as coconspirators under the

19
agent's immunity rule.[17]  (Oak Grove Motion at 18; Mouser Motion at 16-18.)

20
To state a claim for conspiracy under Section 1985, a plaintiff must allege that some racial,

21
or class-based, invidiously discriminatory animus lay behind the conspirators' actions.  Butler v.

22
Elle, 281 F.3d 1014, 1028 (9th Cir. 2002).  A violation of section 1986 depends on the existence of a

23
valid claim under 1985.  Id.

24
25
26
27
    [17]  Defendants also contend that Plaintiff's claim under Section 1986 must be dismissed because it is dependent upon Plaintiff's claim under Section 1985.  (Oak Grove Motion at 18; Mouser Motion at 18.)

28
23

United States District Court

For the Northern District of California

Here, the Court finds that Plaintiff has failed to allege facts sufficient to sustain a claim for violations of Section 1985.  As discussed above, Plaintiff has not sufficiently alleged that Defendants acted with a racially invidious, discriminatory intent.  Plaintiff's allegation that Defendants' decision to seek Plaintiff's expulsion was "influenced by said Defendants Holtermann, Unck, Baker's views about African Americans and/or males in their behavior towards females" is insufficient to establish discriminatory intent.  (FAC ¶ 66.)  Moreover, Plaintiff's allegation that Defendants were influenced by views about African Americans is contradicted by Plaintiff's own allegations.[18]  Plaintiff's allegations suggest that, rather than targeting African American students, Defendants were pursuing a disciplinary program that equally affected all students, without regard to race.[19]

Accordingly, the Court GRANTS Defendants' Motions to Dismiss the Fifth Cause of Action for violations of Sections 1985 and 1986 as to all Defendants without prejudice to Plaintiff to amend his pleadings, if so desired.

### 5.        Claim for Violations of Unruh Civil Rights Act

The Mouser Defendants contend that Plaintiff's claim under Cal. Civ. Code §§ 51, 51.5 and 52 (the "Unruh Act") fails on the following grounds: (1) the Unruh Act does not prohibit discrimination against persons based on their conduct; (2) the Unruh Act does not extend to practices and polices that apply equally to all persons; and (3) a claimant under the Unruh Act must

---

[18]  For example, Plaintiff alleges that Defendant Mouser "caused or helped The District overzealously pursue expulsion of all students engaging in alleged violations of the Student Handbook, even minor violations, and without determination of whether alternative means of discipline or behavior modification would correct the student conduct, and against all alleged student offenders, even for minor offenses, to direct the School District's handling of the incident." (FAC ¶ 13.)

[19]  Because Plaintiff has failed to allege facts sufficient to establish a violation of Section 1985, his dependent claim under Section 1986 likewise fails.

**United States District Court**
For the Northern District of California

establish that he or she had a relationship with the offending organization that was similar to a customer-proprietor relationship.[20]  (Mouser Motion at 19.)

Section 51(b) of the Unruh Act provides:

> All persons within the jurisdiction of this State are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51.  "A policy that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate impact on a protected class."  Turner v. Assoc. of Am. Medical Colleges, 167 Cal. App. 4th 1401, 1408 (Cal. Ct. App. 2008).   Other than Unruh Act claims based on alleged violations of the Americans with Disabilities Act, "a plaintiff seeking to establish a case under the Unruh [Civil Rights] Act must plead and prove intentional discrimination."  Munson v. Del Taco, Inc., 46 Cal. 4th 661, 672 (2009) (citation omitted).

In this case, the Court finds that Plaintiff has failed to plead facts sufficient to prove that Defendants intentionally discriminated against him on the basis of any class protected under the Unruh Act.  As discussed above, Plaintiff's allegations that certain Defendants were "influenced by" other Defendants' views about African Americans is insufficient to establish intentional discrimination.

Accordingly, the Court GRANTS the Mouser Defendants' Motion to Dismiss the Unruh Act claim as to all Defendants without prejudice to Plaintiff to amend his pleadings, if so desired.

## V.  CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss as follows:

(1)     The Court GRANTS Defendants' Motions to Dismiss the Third Cause of Action for Violation of § 1981 without prejudice to Plaintiff to amend his pleadings;

(2)     The Court GRANTS the Mouser Defendants' Motion to Dismiss the Fourth Cause of Action for Violation of § 1983 without prejudice to Plaintiff to amend his pleadings,

---

[20]  As discussed previously, the Court finds that Plaintiff fails to state a claim under his Sixth Cause of Action against the Oak Grove Defendants, because they are immune from suit under Cal. Gov't Code § 821.6.  Accordingly, the Court only considers this claim as to the Mouser Defendants.

25

United States District Court

For the Northern District of California

and DENIES the Oak Grove Defendants' Motion to Dismiss the Fourth Cause of Action for Violation of § 1983;

(3)     The Court GRANTS Defendants' Motions to Dismiss the Fifth Cause of Action for Conspiracy under §§ 1985 and 1986 without prejudice to Plaintiff to amend his pleadings;

(4)     The Court GRANTS the Oak Grove Defendants' Motion to Dismiss the Sixth Cause of Action for Violation of the Unruh Act with prejudice, and GRANTS the Mouser Defendants' Motion to Dismiss the Sixth Cause of Action for Violation of the Unruh Act without prejudice to Plaintiff to amend his pleadings;

(5)     The Court GRANTS the Oak Grove Defendants' Motion to Dismiss the Seventh Cause of Action under California Government Code § 821.6 with prejudice, and DENIES the Mouser Defendants' Motion to Dismiss the Seventh Cause of Action under California Government Code § 821.6;

(6)     The Court GRANTS the Oak Grove Defendants' Motion to Dismiss each claim under the Eleventh Amendment, to the extent Plaintiff seeks retrospective monetary or injunctive relief against Oak Grove and the Oak Grove Defendants sued in their official capacities; and

(7)     The Court DENIES Defendants' Motions to Dismiss on all other grounds.

Any Amended Complaint shall be filed on or before **August 1, 2011** and shall be consistent with the terms of this Order.

On **September 19, 2011 at 10 a.m.**, the parties shall appear for a Case Management Conference. On or before **September 9, 2011**, the parties shall file a Joint Case Management Statement. The Statement shall include, *inter alia*, a good faith proposed schedule as to how this case should proceed.

Dated: July 14, 2011                _____

                                        JAMES WARE
                                        United States District Chief Judge

1   **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2   John Stanley Adler jadler@littler.com
    Eric C Bellafronto ebellafronto@littler.com
3   Mark E. Davis mdavis@davisyounglaw.com
    Maureen A. Folan mdavis@davisyounglaw.com
4   Deanna Jean Mouser dmouser@aalrr.com
    Robert M. Vantress rvantress@vantresslaw.com

5

6   **Dated:  July 14, 2011**                    **Richard W. Wieking, Clerk**

7

8                                                **By:____/s/ JW Chambers_____**
                                                 **Susan Imbriani**
                                                 **Courtroom Deputy**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California