UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J.J., a minor, by and through his Guardian *Ad Litem*, Robert M. Vantress, <br><br> Plaintiff, <br><br> vs. <br><br> OAK GROVE SCHOOL DISTRICT, a public entity school district, et al., <br><br> Defendants. | Case No. C-08-05376 RMW <br><br> **ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTIONS** <br><br> [Re Docket Nos. 218, 219] |

J.J.[1] brings claims under 28 U.S.C. § 1983 against school officials at Bernal Intermediate School ("Bernal") and trustees of the Oak Grove School District ("the District"), in which Bernal is located (collectively "Oak Grove Defendants"), arising out of an incident occurring at Bernal. J.J. also alleges that Deanna Mouser and her law firm ("Mouser Defendants") violated his rights by the advice they gave to the District with respect to action taken against J.J. following the incident. J.J. alleges, among other things, that the defendants deprived him of his civil rights under the Due Process Clause and Equal Protection Clause of the United States Constitution by

---

[1] The court uses initials to refer to plaintiff and other students as they were minors at the time this lawsuit began.

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW

- 1 -

failing to provide him with proper notice and a hearing before he was transferred to a different school within the District and by unlawfully targeting him based on his race. The defendants deny plaintiff's claims and now bring motions for summary judgment.

## I. BACKGROUND

### A. The Incident

Shortly after school on November 29, 2007, an incident occurred between J.J. and a female student, L., on the school campus. Vantress Decl. Ex. 5 (San Jose Police Department Report). The defendants claim that J.J. "humped" L.'s buttocks while refusing her pleas to stop. Oak Grove Defs.' Br. 3, Dkt. No. 219. J.J. insists he was never behind L. and only gave her a hug. Vantress Decl. Ex. 5 at 6 (J.J.'s statement). The incident ended when a teacher, Richard Holtermann, came to the scene after hearing L. yell "no," several times. *Id*. at 4, 5, 7, 8 (witnesses and victim's statements).

### B. Initial Investigation

Bernal administrators, district officials, the San Jose Police Department, and a school official selected by J.J. all investigated the incident. Vantress Decl. Ex. 6 (Expulsion Hearing Report and Recommendation). On November 30, 2007, the day after the incident, Tamara Unck, Assistant Principal at Bernal, spoke with Holtermann, and interviewed L., the alleged victim, and R., a male student who witnessed the incident. Vantress Decl. Ex. 6 at 17-19. On the same day, Katherine Baker, the Principal at Bernal, interviewed L., J.J., and Holtermann. *Id.* 3-4. She also met with J.J.'s mother and J.J. *Id.* at 4-5. On December 3, 2007, Principal Baker met with J.J.'s father and continued her investigation. *Id*. at 5-8.

On December 4, 2007, Principal Baker, based upon her investigation and after having discussions with other school officials, formally suspended J.J. and completed an Oak Grove District Suspension Form recommending that J.J. be expelled. *See* Vantress Decl. Ex. 1, 48:6-10, 37:24-25; Vantress Decl. Ex. 8. J.J. was suspended for five days, consisting of: (1) two days of in-house suspension, which Principal Baker concluded J.J. had already completed sitting at an administrator's office on December 3 and 4 during the investigation, and (2) an additional three days of off-campus suspension, which would begin on December 5. Vantress Decl. Ex. 6 at 8.

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW
- 2 -

Principal Baker also met with J.J.'s mother on December 4 to explain the suspension, the suspension form, and her conclusions based on her investigation. *Id.* at 8-9. J.J.'s mother denied that J.J. had done anything wrong and objected to the procedures that the District followed. *Id.*

The San Jose Police Department conducted its own investigation and interviewed the witnesses on November 29, 2007. Vantress Decl. Ex 5 (Police Report). The police cited J.J. for misdemeanor sexual battery on December 4, 2007. Vantress Decl. Ex 5 (Police Citation). The police ultimately decided not to bring formal charges. Vantress Decl. Ex. 18.

**C.    Lead-Up to the Expulsion Hearing**

On December 5, 2007, there was another meeting about the incident among J.J.'s mother, Principal Baker, a NAACP representative, Superintendent Emmanuel Barbara, and a community liaison. Vantress Decl. Ex. 6 at 9. On December 7, J.J.'s mother, J.J., the NAACP representative, and district representatives met again to discuss the incident and J.J.'s suspension was extended to the date of the expulsion hearing. *Id.* at 10. On December 14, 2007, the District sent J.J.'s parents a letter setting the expulsion hearing for January 10, 2008. Vantress Decl. Ex. 47. On December 19, 2007, J.J.'s parents and the NAACP representative came to the school to view the location of the incident. Vantress Decl. Ex. 6 at 13. Also, on that date, J.J.'s mother requested that the District have Joyce Millner, a District employee whom she trusted, conduct an independent investigation. Millner began her investigation on December 20, 2007. In the Matter re: J.J., Statement of Findings and Decision, Dkt. No. 121-2, Ex. H at 23. On December 21, 2007, Superintendent Barbara had a follow-up meeting with J.J.'s family regarding the incident. *Id.* Shortly thereafter Principal Baker and Assistant Principal Unck prepared administrative declarations summarizing their respective investigations and recommending expulsion. *Id.*; *see also* Vantress Decl. Ex. 6.

Millner conducted initial interviews of all of the witnesses, but was unable to conduct follow-up interviews because of the start of winter vacation. Vantress Decl. Ex 7 (Millner Report). Millner's interview notes on the witnesses' statements are largely consistent with their other statements and findings by other district personnel. *Id.*

### D.     Cancellation of Expulsion Proceedings and Administrative Transfer

On December 21, 2007, Superintendent Barbara met with J.J.'s family during which he explained that his own conclusion was consistent with the results of the other investigations. Barbara Decl. ISO Motion to Strike, Dkt. No. 121 ¶ 13. He described the evidence against J.J. as "overwhelming." *Id*. At the meeting, J.J.'s parents agreed to accept the District's offer to drop the expulsion proceeding if J.J. transferred to Herman Intermediate School at the end of winter break. *Id.*

On January 2, 2008, however, J.J.'s mother notified the superintendent that they were not accepting the offer to transfer. *Id.* at ¶ 14. On January 7, 2007, the District confirmed by phone that it was continuing the expulsion hearing from January 10, 2008, to either January 31 or February 1 at J.J.'s request. Vantress Decl. Ex. 6 at 42 (letter confirming continuance). The District then officially reset the hearing to February 1, 2008. *Id*.

On January 21, 2008, J.J.'s mother, father, and NAACP representatives met with Superintendent Barbara. Vantress Decl. Ex. 24 at 4 (Letter from J.J.'s mother). The parties tentatively agreed once again to drop the expulsion hearing and that J.J. would be transferred to another school. *Id.* Shortly thereafter, J.J. and his parents again decided not to accept the District's offer. *Id.* On January 29, 2008, Superintendent Barbara, after further investigation, cancelled the expulsion hearing. Barbara Decl. Ex. H at 26, Dkt. No. 121-2. On February 20, 2008, Superintendent Barbara completed an amended suspension form that only called for suspension and not expulsion. *Id.* at 27. Superintendent Barbara also officially notified J.J. that he was being transferred to another school in the district. *Id*.

Between December 3, 2007, and March 28, 2008, J.J. was enrolled in independent studies. Vantress Decl. Ex. 24 at 4. J.J. finally returned to regular instruction on April 1, 2008, at Herman Intermediate School. Barbara Decl. Ex. H at 27, Dkt. No. 121-2.

### E.     Due Process Hearing

J.J. objected to the transfer and accused the District of falsifying records pertaining to the incident and a 2006 suspension. *See* Barbara Decl. ¶ 22; Vantress Decl. Ex. 32. J.J. requested a hearing to challenge his records. Barbara Decl. Ex. B. As a result, the District scheduled a

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW
- 4 -

hearing on the records request *and* a due process hearing on the appropriateness of J.J.'s transfer. Barbara Decl. Exs. D, H, Dkt. Nos. 121-1. 121-2. J.J. objected to the appropriateness of the due process hearing. *See* Vantress Decl. Exs. 30, 31, 34, 36.

School Board Trustees Dennis Hawkins, Jeremy Nishihara, Yvonne Cook, Dianne Lemke, and Jacquelyn Adams conducted the hearing over three nights in April and May 2008. Attorney Adam Fiss of the Littler Mendelson law firm acted as an impartial hearing officer. The Board concluded that: (1) the decision to transfer J.J. was appropriate in light of the sexual battery and that the procedure Bernal had taken satisfied due process; (2) no racial discrimination had occurred; and (3) the District's records relating to both the 2006 and 2007 incidents were accurate. Barbara Decl. Ex. H at 37, Dkt. No. 121-2.

The plaintiffs then filed the instant action.

### F. Procedural History

J.J., with his parents acting as both his guardian *ad litem* and his representative, initially brought their complaint on November 26, 2008. Comp., Dkt. No. 1. After multiple motions to dismiss, the court found that the Oak Grove Defendants in their official capacities were entitled to sovereign immunity under the Eleventh Amendment to the extent that J.J. sought retrospective monetary or injunctive relief against them. Order 26, Dkt. No. 183. The Court dismissed J.J.'s claims for violations of sections 1981, 1985, and 1986 as well as for the Unruh Civil Rights Act. *Id.* at 18-24. Ultimately, the court allowed J.J.'s section 1983 claim against the Oak Grove Defendants and the Mouser Defendants to proceed. Order, Dkt. No. 201.

Presently before the Court are: (1) Oak Grove Defendants' Motion for Summary Judgment, Dkt. No. 219; and (2) Mouser Defendants' Motion for Summary Judgment, Dkt. No. 218. The Mouser Defendants raise evidentiary and procedural objections to J.J.'s papers and also join in the substantive arguments made by the Oak Grove Defendants. Mouser Defs.' Br., Dkt. No. 218; Objections, Dkt. No. 241.

### II. ANALYSIS

The issues raised by the summary judgment motions are whether any reasonable jury could find that the actions of the Oak Grove Defendants and their counsel, the Mouser

Defendants, after the incident (1) deprived J.J. of his due process right, or (2) violated J.J.'s equal protection right by basing its decision on race. Although the court must make all reasonable inferences in J.J.'s favor, if there is no genuine issue of material fact the defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### A. Section 1983 Claims Against Oak Grove Defendants

To establish a claim under section 1983, the plaintiff must show "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). As the operators of public schools, which state law required J.J to attend, the Oak Grove Defendants were acting under the color of state law. *See W. Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 638 (1943) ("The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted."). Thus, the issue as to the Oak Grove Defendants is whether J.J. has raised a triable issue of fact that said defendants violated his constitutional rights.

The Supreme Court has recognized that state education codes can impart rights to students—in particular the right to a free public education—such that deprivation of those rights may violate due process. *See Goss v. Lopez,* 419 U.S. 565, 573-74 (1975). In *Goss*, the Court found that the authority of the state to "prescribe and enforce standards of conduct in its schools" is very broad, but "must be exercised consistently with constitutional safeguards." *Id.* The Court acknowledged that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures." *New Jersey v. T.L.O.*, 469 U.S. 325, 339-40 (1985).

The court will first consider whether the Oak Grove Defendants violated any of the California Education Code sections on which J.J. relies, and if so, whether any such violation was arbitrary or wrongful and thus constituted a due process violation. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The court will also consider whether the District followed a fair procedure complying with due process and if there is any evidence that the District violated J.J.'s equal protection rights. *See id.* Finally, the court will consider qualified immunity.

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW

- 6 -

1. **J.J.'s Statutory Violation Allegations**

J.J. identifies ten alleged rights based on sections of the California Code of Education,[2] which he claims the Oak Grove Defendants violated. *See* Opp'n 1-3. He does not challenge the constitutionality of any of the Education Code provisions. The court addresses these alleged rights below.

    a. Rights 1, 7, & 8: To Attend Home School, to Not Be Transferred from Home School, and to Return Promptly to Home School after Suspension

J.J. claims he had a right to attend his home school, Bernal Middle School; the right not to be transferred unless his parents agreed to a transfer or he was found guilty of misconduct warranting expulsion; and the right to be returned to his home school once the expulsion proceeding was dropped. Opp'n 1-3, Dkt. No. 237. J.J. relies on eight provisions of the Education Code for the existence of these rights, Opp'n 1-3, but they are not as extensive as he claims.[3] Section 46600 only relates to transfers between districts, not within districts, and J.J. was transferred within the Oak Grove School District. Section 48200 gives students the right to attend a school in their home district, but not necessarily a "home" school.[4] Section 48900 lists the offenses that are grounds for suspension or expulsion. The section does not specifically discuss transfers, but gives a superintendent of the school district or principal the authority to "use his or her discretion to provide alternatives to suspension or expulsion." § 48900(v). This logically includes the authority to transfer a student within the district. Section 48925(b) defines expulsion and section 48900.6 provides that the principal or superintended *may* require community service as an alternative to other disciplinary action. Section 48911(e) requires

---

[2] All references to sections are to the California Code of Education unless otherwise indicated.
[3] He relies on sections 46600, 48200, 48900, and 48925(b) to support the right to attend his home school; sections 46600, 48200, 48900, 48900.6, and 48918(e) to support the right to no administrative transfer without grounds for expulsion; and sections 48911(e), 48918(a) and (e) to support the right to be returned after expulsion proceedings are dropped. Opp'n 1-3.
[4] "Each person subject to compulsory full-time education . . . shall attend the public full-time day school . . . of the school *district* in which the residency of either the parent or legal guardian is located." Cal. Educ. Code § 48200 (emphasis added).

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW
- 7 -

schools to report the suspension of a pupil to the governing board of the district. Section 48918(a) only relates to the timing for an expulsion hearing and the subsequent decision, which J.J. has not challenged.[5] The District did not violate any of these provisions.

Finally, section 48918(e) defines what should happen to a student whom the District elects not to expel after a hearing. This provision does not apply to J.J. because he never had an expulsion hearing. Even if it did apply, the District did not violate it. The law requires that a student who is not expelled after an expulsion hearing be immediately reinstated in "*a* classroom instructional program," "other instructional program," or a rehabilitation program. § 48918(e) (emphasis added). The section does *not* require that a student be placed back in the same educational program or school in which he was enrolled prior to suspension. *Id.*

At the time the expulsion hearing was taken off calendar, J.J. was already enrolled in an independent instructional program. *See* Vantress Decl. Ex 13 at 68 (Letter from District to J.J's mother); Vantress Decl. Ex. 24 at 4 (Letter from J.J.'s mother to State Board of Education). While he was enrolled in the independent study program, Bernal provided him with packets of schoolwork, homework, and gave him access to teachers by phone. Vantress Decl. Ex 1, 30:2-6 (Baker Depo.). The independent study would likely qualify as an "other instructional program."[6] Furthermore, as best the court can discern, the transfer option, including immediate enrollment at a different school within the district, had been available to J.J. since winter break. *See* Vantress Decl. Ex. 13 at 69. Because J.J was in an "instructional program" and had options to return to a classroom instructional program, the District did not violate section 48918(e).

---

[5] J.J. has not alleged or argued that the defendants violated section 48918(a) by failing to hold the expulsion hearing within thirty-schooldays and thus the court does not consider that issue. J.J.'s parents also requested one extension of the expulsion hearing. Vantress Decl. Ex 13 at 69.

[6] The adequacy of the program is not before this court.

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW

- 8 -

b. Right 2: No Discipline without Substantial Evidence of Misconduct

J.J. claims he had a right not to be accused or disciplined without "substantial evidence" of each element or qualifying offense of misconduct. Opp'n 2. J.J. bases this claim on three sections: 48900, 48918(b)(5), 48918(f), and 48922(a). Opp'n 2.

Section 48918(f) requires that the governing board base expulsion recommendations on substantial evidence. However, the District did not expel J.J. and thus the section does not apply. Even if it did, a reasonable fact-finder could have found substantial evidence because all of the witnesses generally agreed about what happened except for J.J. *See, e.g.,* Vantress Decl. Ex 6 (containing the summaries of Principal Barker, Assistant Principal Unck, and witness statements); Ex. 7 (Millner Report). Therefore, the court finds that the Oak Grove Defendants had substantial evidenced justifying the actions they took.

The other cited sections do not help J.J. Section 48900 states that a pupil shall only be suspended or recommended for expulsion if the principal or superintendent determines that the pupil committed one of an enumerated list of offenses. The District determined that J.J. committed some of these offenses based upon extensive investigations. *See* Barbara Decl. ¶ 18; Vantress Decl. Ex 16.

The remaining sections relate to the procedure for expulsion and appeal. *See* §§ 48918(b)(5), (f) and 48922(a). J.J. was not expelled from the district, and therefore they are inapplicable. Even if they did apply during the period in which the District was considering expulsion or are deemed to apply to suspension hearings, the Oak Grove Defendants did not violate them. Section 48918(b)(5) requires an opportunity for the pupil or the pupil's parents to appear, review, and challenge witnesses and testimony at an expulsion hearing. Although the District never held an expulsion hearing,[7] J.J.'s parents had numerous opportunities to meet with the District to discuss the issues and evidence, as described above. The District informed J.J.'s

---

[7] J.J.'s parents also specifically declined to have the expulsion hearing reinstated after the District canceled it. Vantress Decl. Ex. 13 at 69.

1  parents of these rights and the procedure for exercising them in a letter prior to the scheduled date
2  of the expulsion hearing. *See* Vantress Decl. Ex 6 at 40-47.

3                     c.   Rights 3 & 10: Unbiased Determination and Equal Treatment
4      J.J. claims he had the right to have his guilt or innocence determined by neutral and
5  unbiased parties based upon sections 48900, 48918, and 48919.  These sections do not directly
6  support the alleged right nor did the District violate them.  Section 48900, which provides the
7  grounds for suspension and expulsion, is discussed above, and the Oak Grove Defendants did not
8  violate it.  Similarly, section 48918, also discussed above, defines the procedures for an expulsion
9  hearing.  J.J. has not stated what particular provision the District violated and the court found that
10 the District followed the procedure for an expulsion hearing prior to canceling the hearing.
11 Finally, section 48919 defines the procedure for appealing an expulsion to the country board of
12 education, which is inapplicable.

13                     d.   Right 4: Suspension as a Last Resort
14     J.J. claims he had the right not to be suspended unless there were no alternative means of
15 correction or he posed a danger to others at the school.  Opp'n 2 (citing sections 48900, 48900(v),
16 48900.5, 48900.6, 48915(b) and (e)).  This overstates California law, which only provides that the
17 District *may* use discretion to provide alternatives to suspension or expulsion.  § 48900(v).
18     As explained before, some of these sections are inapplicable because J.J. was not expelled.
19 Even if they all do apply, the District did not violate J.J.'s right because a reasonable official
20 could have concluded that other means of correction would fail and that J.J.'s presence caused a
21 continuing danger to the physical safety of others.  *See* § 48900.5.  J.J. was suspended the year
22 before for making obscene sexual gestures in class, suggesting less serious means of correction
23 would fail.  *See* Vantress Decl. Ex. 6.  Principal Baker concluded that there was a threat of
24 physical danger if J.J. returned to Bernal because other students might retaliate against him and
25 because J.J.'s "extremely poor judgment and decision making reflected in this incident" made
26 another incident more likely.  Vantress Decl. Ex. 6 at 15.  Assistant Principal Unck agreed that
27 J.J. presented a danger.  *Id.* at 20.  Superintendent Barbara also met repeatedly with L.'s family,
28

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW                - 10 -
SW

and L. feared having J.J. return to campus, suggesting a danger to physical safety. Barbara Decl. ¶ 19.

Therefore, to the extent such a right exists, the District did not violate it.

e. Rights 5 & 6: Five Day Limit on Suspension and Limits on Extensions

J.J. claims he had a right not to be suspended for more than five days, unless the suspension was extended pending an expulsion hearing in a meeting with him and his parents within five days of the incident and there was substantial evidence that he posed a danger to others or to the instructional process. Opp'n 2. J.J. raises three issues: (1) whether the suspension-extension meeting was held in time; (2) whether there was evidence that he posed a danger or threat of disrupting the instructional process; and (3) whether he was suspended for too long.

First, J.J. argues that the District was required to hold the suspension-extension meeting within five days of suspending him. § 48911(a), (g). This would have required a meeting on or before December 4, 2007. Opp'n 5 n.5. J.J.'s suspension-extension meeting was held on December 7, 2007.[8] The District formally suspended J.J. on December 3, 2007, which means the December 7 meeting was held within five days of the suspension. Vantress Decl. Ex. 8.

J.J. argues, however, that the District actually suspended him on November 30, 2007, which would mean the suspension-extension meeting was held a day late.[9] The Education Code defines suspension as "removal of a pupil from ongoing instruction for adjustment purposes." §

---

[8] J.J. also argues that "The hearing was not held until December 7, 2007. [citation.] And there was no hearing. Just a meeting in which the parents were not told of this purpose, followed by a letter making false allegations on December 14, 2007." Opp'n 5 n.5. To the extent that J.J. argues that the December 7th meeting was not a valid suspension-extension meeting pursuant to section 48911(g), he provides no evidence to support his contention. In contrast, Principal Baker's expulsion hearing declaration, signed under penalty of perjury, states that she had an over 3-hour meeting with J.J., his mother, and other supporters regarding J.J.'s "suspension, extension of suspension, and recommended expulsion." Vantress Decl. Ex. 6 at 10. *See also*, Vantress Decl. Ex. 43 (December 14, 2007 follow-up letter describing the suspension-extension meeting). Thus the uncontroverted facts are that a suspension-extension meeting was held on December 7, 2007.

[9] December 1 and 2, 2007, were weekend days.

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW

- 11 -

48925(d). Based on the evidence before this court, it is unclear whether J.J.'s removal from class on November 30 was a suspension because he was not removed from class until partway through the last period of the day. *See* Vantress Decl. Ex. 6 at 17-18 (Unck Decl.). At that point, administrators were still investigating the incident and thus he was most likely removed for investigative purposes not "adjustment purposes." However, these facts are in dispute and thus the court cannot conclude as a matter of law that the District did not violate the five-day requirement for holding a suspension-extension meeting. Nevertheless, as explained below, holding the meeting one day late was not a constitutional violation.

Second, J.J. argues that there was no evidence that he posed a danger or threat of disrupting the instructional process. A district may extend a suspension while an expulsion is being processed if the principal, after meeting with the parents, determines that the presence of the pupil at the school "would cause a danger to persons or property or a threat of disrupting the instructional process." § 48911(g). As explained above, a reasonable official could have concluded that J.J. presented a threat of physical danger. Principal Baker also concluded that J.J. should not be allowed to return because the female victim was fearful of seeing him and his presence might disrupt the educational process. The law only requires that the superintendent or his designee make a reasonable determination. *See* § 48911(g). Although J.J. and his parents may have disagreed with the District's decision, the evidence supports the conclusion that the District made a reasonable determination.

Third, J.J argues that his suspension of 122 days exceeded the maximum allowed under the law. *See* Opp'n 4. A principal may suspend a student for up to a maximum of five consecutive schooldays. § 48911(a). Although J.J. may have been out of school for 122 days, the undisputed facts are that the District did not suspend him for this amount of time. As explained above, the district legally extended J.J.'s suspension through winter break pending the expulsion hearing and after winter break, J.J. was in independent study and had the option to transfer to another school within the district. Therefore, the court finds that the District did not violate the Education Code by suspending J.J. for too many days.

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW
- 12 -

f. Right 9: Clear Record

J.J. claims the right to have all traces of alleged misconduct excluded from his official file unless he is found guilty of an offense justifying discipline. Opp'n 3. However, section 48900.8 cited by J.J. does not contain any provision about corrections or limitations on what may be placed in a student's records. All the section requires is that the appropriate student records note what offenses were committed for notifying parents and reporting to the Department of Education on expulsions and suspensions. The District did not violate section 48900.8 in J.J.'s case.

2. **Constitutional Violations**

a. Due Process

In *Goss*, the Supreme Court held that a state law providing for public education for all children created a property interest that the government could not revoke without due process. 419 U.S. at 573. The Court held that a suspension, even a relatively short one of ten days was an "interference with a protected property interest" such that a student "must be given some kind of notice and afforded some kind of hearing." *Id.* at 579. The Court noted that a suspension "is a serious event in the life of the suspended child" and that the charges of misconduct underlying the suspension "[i]f sustained and recorded . . . could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." *Id.* at 575. The Court held that due process for a ten-day suspension required that "the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. The court concluded by noting that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id*. at 584.

As explained above, California law only permits a district to suspend a student for more than five consecutive school days if the suspension is extended after a meeting with the parents on the basis that the student presents a danger to others or a threat of disrupting the instructional process if returned to his school or an alternate school. The District's suspension policy required: (1) an informal conference with the student informing the student of the reason for the discipline,

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW
- 13 -

the evidence, and allowing the student an opportunity to present his version; (2) an attempt to notify the parent via phone or in person; (3) written notice to the parent; (4) a meeting with the parents; and (5) that a suspension not be for more than five consecutive school days except when a student was being considered for expulsion. Vantress Decl. Ex. 6 at 87 (Oak Grove School District 2006-2007 Student Behavior and Parent Information Handbook). Based on all of the available evidence, the District followed these requirements. The extensive investigations and numerous meetings related to the incident described above provided more than adequate due process to J.J.

Additionally, J.J.'s forced transfer to another school in the district did not violate due process. *See Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 27 (5th Cir. 1997) (holding that a transfer alone did not deprive a student of any property interest and thus did not even raise a constitutional issue); *Doe v. Bagan*, 41 F.3d 571, 576 (10th Cir. 1994) (no due process violation for failing to transfer a student because no authority supporting "the right to a public education encompasses a right to choose one's particular school."); *Zamora v. Pomeroy*, 639 F.2d 662, 669 (10th Cir. 1981) (no deprivation of education and thus no due process violation for transferring student for disciplinary reasons, even to an inferior school); *Helena F. v. W. Contra Costa Unified Sch. Dist.,* 49 Cal. App. 4th 1793, 1800 (1996) (finding no due process violation for assigning students to schools within the district that were not the student's first choice and were not geographically convenient and finding parents' rejection of alternative schools offered to them was irrelevant as far as due process concerned). J.J.'s transfer, standing alone, and all of the school he missed because of his or his parent's decision not to enroll him in one of the offered schools does not implicate a due process issue.

Finally, as explained above, the only possible violation of the California Education Code was that the suspension-extension meeting with J.J and his parents may have been held one day late. However, the court has found no case suggesting that a one-day delay in holding a suspension-extension meeting constitutes a due process violation, particularly where the district spent the time leading up to the meeting investigating J.J.'s actions. *See, e.g.,* Vantress Decl. Ex. 6 at 3-10. The evidence shows the district provided J.J. extensive due process, meeting with his

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW
- 14 -

parents and their representatives multiple times as well as interviewing the witnesses multiple times.

### b. Equal Protection

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239-40 (1976)). Here, J.J., as an African-American student, has shown he is a member of a protected class, but he fails to raise an issue of material fact suggesting that the defendants intentionally discriminated against him based upon his race.

J.J. claims the District disciplined him under its zero tolerance policy and that such policies have disproportionate effects on African-American students, which makes the action against him discriminatory. *See* Opp'n 4; Vantress Decl. Exs. 45 (California Dept. of Ed. statement on zero tolerance policies), Ex. 46 (Harvard report on discriminatory consequences of zero tolerance policies). He argues that the Oak Grove Defendants' "enforcement of its Zero Tolerance Policy ignored the intent of the perpetrator" and that he was not given a second chance. Opp'n 16-17.

However, there is no evidence that J.J. was subject to a zero tolerance policy, that the District's implementation of its zero tolerance policy had a discriminatory impact on African Americans, or that the District discriminated against him. Although the District had a zero tolerance policy, the district had discretion in applying it, as demonstrated by this case—J.J. was not expelled and was given a second chance at another school. *See also* Vantress Decl. Ex. 4 (Barbara Depo.) at 62:9-63:3; Ex. 3 (Quon Depo.) 69:18-70:3.

In his complaint, J.J. alleged that Principal Baker made an announcement to all students and others publicly over the PA system at Bernal that "a student was molested and the perpetrator was returning because the District caved in." FAC ¶ 58. There is no evidence that Principal Baker made such a comment and the District repeatedly denied it was made. Even if the remark was made, although it may have shown bad judgment, it does not reflect racial animus.

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW
- 15 -

Finally, multiple authorities investigated the alleged discrimination and all reached the same conclusion: that there was no discrimination. The California Department of Education reviewed an appeal by J.J.'s mother in which she alleged that J.J. was denied an equal education opportunity because of his race. Mouser Decl. ISO Motion to Strike and Dismiss Ex. 1, Dkt. No. 109-2, Ex. 1. The Department determined that the documentation did not provide support for the allegation and that the District acted reasonably and appropriately. *Id.* J.J. appealed this decision to the State Superintendent of Public Instruction who denied the appeal. *Id.* at Ex. 3. J.J. also sought relief from the U.S. Department of Education, which determined that "the appropriate legal standard was applied" and that the process used by the District and the State of California in reviewing the District's actions meets the U.S. Department of Education Office for Civil Rights standards. *Id.* at Ex 2.

Therefore, the court finds no merit to plaintiff's claim of racial bias suggesting an equal protection violation.

        3.    **Qualified Immunity**

The Oak Grove Defendants claim that if they violated any constitutional right of J.J. by the disciplinary action they took, they are nevertheless entitled to the defense of qualified immunity. Qualified immunity limits the reach of a section 1983 claim. In the court's order of July 14, 2011, dismissing in part J.J.'s first amended complaint, the court explained the standard for the defense:

> Qualified immunity is a defense against liability available to government officials who perform executive and administrative functions and who are sued for monetary relief in their personal capacities. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine shields public officers from "undue interference with their duties and potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982); *see also Brosseau v. Haugen*, 543 U.S. 194 (2004). To determine whether a public official is entitled to qualified immunity from § 1983 liability, a court must consider: (1) whether the plaintiff has identified a specific federal law or constitutional right that allegedly has been violated; (2) whether that right was so clearly established as to alert a reasonable official to its parameters; and (3) whether a reasonable officer could have believed his or her conduct was lawful. *See Sweaney v. Ada County*, 119 F.3d 1385, 1388 (9th Cir. 1997) (citing *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996)). Where a plaintiff has established the existence of a "clearly established" right, the

> defendant has the burden of proving that, even if he violated the plaintiff's constitutional rights, his actions were reasonable. *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995). "[I]n the specific context of school discipline, . . . a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student." *Wood v. Strickland*, 420 U.S. 308, 322 (1975).

Order at 21. Students have a legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause. *Goss*, 419 U.S. at 574. The school's right to enforce standards, however, is very broad. *Id.* School officials cannot impose discipline for malicious or racial reasons but otherwise the officials have broad discretion. *Id.*

There is no evidence that any of the Oak Grove Defendants acted with malice or racial animus in their handling of J.J.'s case. Even if there had been a constitutional violation, the contours of the right of school officials to impose standards for conduct and discipline are broad and not so clear that a reasonable school official would have understood that the action he or she took in J.J.'s case violated his constitutional rights. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). The official's mistake, if any, as to what the law required was reasonable. Thus, the Oak Grove Defendants are entitled to the immunity defense. *Id.* at 205.

**B.      Other Defenses**

The court has found no constitutional violation and that even if there were some evidence of a constitutional violation, the Oak Grove Defendants are entitled to qualified immunity. Because these are sufficient grounds for granting summary judgment for defendants, the court does not reach the other defenses raised by defendants.

**C.      Mouser Defendant's Motion**

The Mouser Defendants joined in the Oak Grove Defendants' summary judgment motion. They worked for the District as legal advisors. Because J.J.'s claims against the Mouser Defendants are based on what they advised the District to do and because the court has found no

ORDER GRANTING SUMMARY JUDGMENT
Case No. C-08-05376-RMW
SW

- 17 -

1  underlying constitutional violation, the court also finds that the Mouser Defendants did not

2  violate J.J.'s constitutional rights.

3       The Mouser Defendants are also entitled to summary judgment because plaintiff admitted

4  they had no evidence against the Mouser Defendants.  Plaintiffs failed to respond to requests for

5  admission served by the Mouser Defendants on May 15, 2012.  By failing to respond, the

6  requests are deemed admitted.  Fed. R. Civ. P. 36(a)(3).

### III.    ORDER

     For the foregoing reasons, the court GRANTS defendants' motions for summary judgment.

Dated:  June 20, 2013

_/s/ Ronald M. Whyte_
Ronald M. Whyte
United States District Court Judge